ESCAMBRÓN DEVELOPMENT CORPORATION, peticionaria y recurrida, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrente.

Número 12586.

*Sometido:* 30 de junio de 1959. *Resuelto:* 18 de mayo de 1961.

*Francisco Espinosa, Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar y Edgar S. Belaval, Procurador Auxiliar,* abogados del recurrente; *René Benítez,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Desde el inicio de este litigio, el Estado Libre Asociado ha impugnado la jurisdicción de los tribunales para conocer del mismo fundándose en que no ha dado su consentimiento para ser demandado. Esta es una cuestión previa, que de prevalecer, nos impediría resolver en sus méritos la controversia entre las partes.

Por contrato privado celebrado el día 15 de diciembre de 1931, El Pueblo de Puerto Rico, representado por su Comisionado del Interior y Presidente de la Comisión del Parque

Muñoz Rivera, Sr. Guillermo Esteves, en virtud de la autorización conferídale por la Ley Núm. 84 de 2 de agosto de 1923, cedió en arrendamiento a don Félix Benítez Rexach, un predio de terreno en los alrededores del sitio denominado "Escambrón" destinado para la construcción de un balneario y sitio de recreo en el área del Parque Muñoz Rivera.

La cláusula 4 de dicho contrato dispone:

"4.—El término de arrendamiento, será de Quince Años (15) y empezará a contarse un año después de la fecha de firmarse este contrato, comprometiéndose el arrendatario Don Félix Benítez Rexach a invertir en las obras una cantidad no menor de Treinta Mil ($30,000.00) Dólares y siendo además convenido entre las partes en que por cada Dos Mil ($2,000.00) Dólares que sobre la cantidad estipulada de dichos Treinta Mil ($30,000.00) Dólares invirtiere el señor Félix Benítez Rexach tendrá derecho a un año más de arrendamiento, pero con el entendido de que el término del arrendamiento no será mayor de Treinta (30) Años sea cualquiera la cantidad adicional invertida."

Por la cláusula 5 se dispuso que si transcurrido un año el Sr. Benítez Rexach no hubiera comenzado las obras quedaría rescindido el contrato y vendría obligado a pagar al Gobierno Insular una indemnización de $1,000 y por la cláusula 15 se dispuso:

"15.—Este contrato está sujeto a la eventualidad de que se ultime por el Gobierno de los EE. UU. el traspaso de los terrenos de la Reserva del Escambrón a favor de El Pueblo de Puerto Rico." (1)

---

(1) Esta cláusula obedeció al hecho de que para esa fecha El Pueblo de Puerto Rico no tenía aún título sobre la parcela arrendada. La Ley Núm. 33 de 17 de junio de 1925 autorizó al Gobernador a trasmitir al Gobierno de los Estados Unidos ciertas propiedades, como así lo hizo, a cambio de que los Estados Unidos trasmitieran a El Pueblo de Puerto Rico los terrenos de la Reserva Militar de San Juan conocidos por "El Escambrón". Mientras se llevaban a cabo los trámites de la permuta se enmendó la ley federal quitándole al Presidente de los Estados Unidos el poder de efectuar estos traspasos por proclama y requiriendo legislación específica, la cual no se obtuvo hasta el año 1938.

En 10 de marzo de 1932 el Sr. Benítez Rexach le dirigió una comunicación escrita al Sr. Guillermo Esteves, Comisionado del Interior, informándole que las dificultades surgidas entre las autoridades militares y el Gobierno Insular habían traído consigo dilación en las obras en el Escambrón para el balneario y le suplicaba que dejaran aclarado el contrato de arrendamiento en el sentido de que el mismo "empezará a contar un año después de la fecha en que el Gobierno Federal le dé posesión oficial al Gobierno Insular de dichos terrenos, por tanto pagando arrendamiento un año después de haberlos yo recibido".

Por carta fechada 17 de marzo de 1932 el Comisionado del Interior contestó al Sr. Benítez Rexach en los siguientes términos:

"Se accede a lo solicitado de acuerdo con la cláusula 15 que en nota adicional aclaratoria aparece en el contrato de arrendamiento; es decir, que la fecha en que empezará a regir su contrato será en la misma fecha en que se traspasen esos terrenos a El Pueblo de Puerto Rico y usted pueda disponer libremente de los terrenos arrendados en vez de contarse desde la fecha en que fue firmado el contrato como se dice en la clásula 4.

"Y para su conocimiento a los fines consiguientes le escribo la presente."

El balneario construido por el Sr. Benítez Rexach se inauguró el día 30 de diciembre de 1932.

En 8 de noviembre de 1938, el Gobierno de los Estados Unidos otorgó escritura de traspaso de los terrenos del Escambrón a favor de El Pueblo de Puerto Rico, y a partir de dicha fecha, El Pueblo de Puerto Rico empezó a cobrar cánones de arrendamiento sobre dicha propiedad al Sr. Benítez Rexach.

Por escritura pública de 17 de febrero de 1940, el señor Benítez Rexach hizo cesión de su contrato de arrendamiento a Escambrón Development Corporation.

Por escritura de 17 de abril de 1940, el entonces Comisionado del Interior y Presidente de la Comisión de Parques,

Sr. José Enrique Colom ratificó en todas sus partes el contrato de arrendamiento hecho por su antecesor don Guillermo Esteves, después de rectificarse la cabida de la parcela arrendada, y reconocer que el Sr. Benítez Rexach había invertido en las obras del balneario más de $60,000 por lo que el plazo del arrendamiento quedaba automáticamente extendido y prorrogado por el término adicional que provee la cláusula número cuatro del contrato privado de arrendamiento de 15 de diciembre de 1931.

En 1955 Escambrón Development Corporation inició una acción de sentencia declaratoria ante el Tribunal Superior, Sala de San Juan, contra el Estado Libre Asociado de Puerto Rico alegando que existía discrepancia en la interpretación del contrato de arrendamiento tantas veces mencionado, respecto a la fecha de su vencimiento. Alega que es la contención del demandado que el término del arrendamiento empieza a contar un año después del otorgamiento del contrato privado de 15 de diciembre de 1931 y que la carta del Comisionado del Interior variando ese término carece de validez y eficacia legal, mientras que la demandante sostiene que tal como reza dicha carta el término del arrendamiento empezaba a contarse desde el día 8 de noviembre de 1938, fecha en que los terrenos arrendados fueron traspasados a El Pueblo de Puerto Rico.

Contestó el demandado negando que la contención de la demandante fuera la correcta y además alegó que todas las cuestiones de hecho o de derecho envueltas en el caso fueron anteriormente resueltas en contra del causante de la demandante en el caso de *Benítez Rexach* v. *Sancho Bonet, Tes.*, 54 D.P.R. 751.

El demandado también impugnó la jurisdicción del tribunal por el fundamento de que no había dado su consentimiento para ser demandado, cuestión ésta que le fue resuelta en su contra.

Sometido el caso por una estipulación de hechos y la deposición del Sr. Guillermo Esteves, el tribunal a quo, luego de formular conclusiones de hecho y de derecho dictó sentencia declarando que el término del arrendamiento debe empezar a contarse desde la fecha en que los terrenos arrendados fueron traspasados al Pueblo de Puerto Rico—8 de noviembre de 1938—y que por lo tanto dicho contrato vencerá el 8 de noviembre de 1968.

Ante nos, el demandado imputa al tribunal sentenciador la comisión de los siguientes errores:

"1.—El Ilustre Tribunal sentenciador cometió grave error de derecho al resolver que el contrato de arrendamiento vence el día 8 de noviembre de 1968.

"2.—El Ilustre Tribunal sentenciador cometió grave error de derecho al asumir jurisdicción en este caso."

■■■ Somos de opinión que el segundo error fue cometido y ello nos impide considerar y resolver la controversia respecto a la interpretación del contrato de arrendamiento. (²)

Es tan antigua como conocida la doctrina que sostiene la inmunidad del soberano contra pleitos. Repetidas veces se ha resuelto en esta jurisdicción que el gobierno de Puerto Rico no puede ser demandado sin su consentimiento. *Meléndez v. E. L. A.*, 81 D.P.R. 824 y casos en éste citados. Puede sin embargo renunciar su inmunidad y así lo ha hecho mediante leyes generales y especiales de la Asamblea Legislativa. Véase el caso de *Meléndez*, supra.

Cuando en 16 de agosto de 1955 se instó la presente acción, ya estaba en vigor la Ley Núm. 104 de 29 de junio de 1955

---

(²) Es obvio que la controversia habrá de plantearse nuevamente ante los tribunales si el Gobierno intenta tomar posesión de los bienes arrendados en la fecha en que según su criterio, vence el término de dicho contrato. Si por el contrario cree conveniente y beneficioso que la controversia entre las partes se resuelva por los tribunales antes de dicha fecha, el Gobierno podría entablar un recurso de sentencia declaratoria similar a éste.

autorizando reclamaciones y acciones contra el Estado Libre Asociado.(³)    En lo pertinente dicha ley dispone:

"Artículo 2.—Se autoriza demandar al Estado Libre Asociado de Puerto Rico, ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:

"(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de $15,000 causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia.

"(b) Acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad, o por sus rentas y utilidades y para deslinde de fincas rústicas.

"(c) Acciones civiles en que la cuantía reclamada no exceda de $15,000 de principal, y que se funden en la Constitución, o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado, o en algún contrato expreso o tácito con el Estado."    (32 L.P.R.A., sec. 3077.)

Con anterioridad a la vigencia de esta ley ya regían en Puerto Rico la "Ley Uniforme de Sentencias Declaratorias" aprobada en 25 de abril de 1931 y efectiva noventa días después de su aprobación.    Dicho estatuto, sin embargo, no concede el consentimiento del Gobierno para que se le demande bajo sus disposiciones.    La inmunidad del soberano no ha sido alterada o modificada por la "Ley Uniforme de Sentencias Declaratorias".    *Valiente & Cía.* v. *Cuevas, Comisionado*, 65 D.P.R. 181.

■■ Debemos pues recurrir a la Ley 104 para determinar si el caso de la demandante está comprendido dentro de sus disposiciones.    Por el inciso (b) del artículo 2, el estado dio su consentimiento para que se le demande en acciones reivindicatorias de propiedad mueble e inmueble, o

(³) Esta ley (32 L.P.R.A., sec. 3077 y siguientes) derogó la Ley Núm. 76 de 13 de abril de 1916, según enmendada, que era la que autorizaba demanda contra El Pueblo de Puerto Rico en determinados casos.

derechos sobre las mismas con o sin resarcimiento de daños y perjuicios, o por sus rentas y utilidades y para deslinde de fincas rústicas.

Claramente la acción ejercitada por la demandante no tiene por objeto reivindicar propiedad o derechos sobre ésta, ni mucho menos, el de obtener un deslinde. La contención de la demandante de que este inciso confirió jurisdicción al tribunal en su caso, carece en absoluto de méritos.

El inciso (c) tampoco le confirió jurisdicción al tribunal. Dicho inciso autoriza "[a]cciones civiles en que la cuantía reclamada no exceda de $15,000 de principal, y que se funden en . . . . . , algún contrato expreso o tácito con el Estado."

Todo lo que la demandante solicita en la presente acción es que el tribunal, mediante sentencia declaratoria, resuelva la incertidumbre que existe en cuanto al término de vencimiento del contrato de arrendamiento. En realidad no se trata de una reclamación de cuantía alguna que se funde en el contrato. Lo único que el tribunal a quo resolvió en su sentencia, después de asumir jurisdicción en el caso, fue que el arrendamiento vencía el día 8 de noviembre de 1968 y no en la fecha anterior que sostiene el Gobierno.

Para convenir con el criterio de la demandante tendríamos que leer el indicado inciso (c) como autorizando demanda en las acciones que se funden en algún contrato expreso o tácito con el Estado. Sin embargo, las acciones autorizadas por dicho inciso son aquellas que envuelven reclamación de cuantía en límite fijado de $15,000 y que se funden en la Constitución, o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado, o en algún contrato expreso o tácito con el Estado.

Debemos interpretar la Ley 104 restrictivamente a favor del Estado, y no podemos incluir en sus disposiciones otras acciones que no sean las que el legislador incluyó expresa-

mente. *Santiago* v. *Pueblo*, 74 D.P.R. 211; *Campis* v. *Pueblo*, 67 D.P.R. 393; *Acevedo* v. *Pueblo*, 69 D.P.R. 434; *Valiente & Cía.* v. *Cuevas*, supra.

Por las razones expuestas se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, y se dictará otra desestimando la demanda por falta de jurisdicción.

El Juez Asociado Sr. Belaval no intervino.

El Juez Asociado Sr. Hernández Matos disintió.