324

Ramón Ruiz y Fernando Barnés, demandantes y apelados, *v.* Commercial Insurance of Newark et al., demandados y The American Insurance Co., interventora y apelante.

*Número:* 12374. *Resuelto:* 15 de agosto de 1961.

*Héctor Lugo Bougal,* abogado del demandante Ramón Ruiz; *Rafael A. González* abogado de los demandados y *Córdova & González* y *Héctor Martínez Muñoz,* abogados de la interventora.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

En 22 de abril de 1955 la Sala de Ponce del Tribunal Superior dictó sentencia en el pleito civil número CS-53-1737, y, entre otros pronunciamientos, condenó a Ramón Ruiz y su aseguradora Commercial Insurance Company of Newark, New Jersey a satisfacer la suma de $1,351.73 a The American Insurance Company of Newark, New Jersey. La aseguradora satisfizo $391.73 y agotó así su responsabilidad bajo los términos de una póliza de responsabilidad pública que con un límite de $1,000([1]) había expedido a favor de Ruiz. Quedó en descubierto la suma de $960.

Ruiz inició posteriormente un pleito bajo el número CS-56-736 del mismo tribunal contra Commercial Insurance Company bajo la cubierta de colisión de la póliza número 62-11203 H para recobrar los daños ocasionados a su automóvil. Como cuestión de hecho la póliza mencionada había sido expedida por la Commercial y otra compañía del mismo grupo, Pacific National Fire Insurance Co., dividiéndose los riesgos cubiertos, de forma que Commercial asumió el riesgo de los daños que causara Ruiz en la operación del vehículo

---

([1]) El balance de $608.27 fue satisfecho al otro demandante Fernando Barnes por daños ocasionados a un vehículo de su propiedad. El tribunal determinó el importe total de los daños en $1,960.00, pero la American le pagó a Barnes $1,351.73 en virtud de una póliza para cubrir el riesgo de colisión que había expedido a favor de éste. Se subrogó, por tanto, en la causa de acción hasta tal cantidad.

asegurado—responsabilidad pública—y Pacific aceptó el riesgo de los daños que pudieran ocasionarse a dicho vehículo—colisión.

Para asegurar el pago del balance del crédito por sentencia ascendente a $960 y los intereses correspondientes, American obtuvo una orden en el pleito CS-53-1737 dirigida a Ramón Ruiz y a su aseguradora Pacific para que de cualquier suma que ésta se viera obligada a satisfacer a aquél bajo los términos de la póliza número 62-11203 H se retuviera la cantidad indicada.[2]    Esta orden fue debidamente noti-

[2] La orden de aseguramiento, copiada a la letra, lee como sigue:

"VISTA la moción de la American Insurance Co. of Newark, New Jersey, en la que solicita se decrete el aseguramiento de la efectividad de la sentencia dictada en este caso el 22 de abril de 1956 (sic) contra el señor Ramón Ruiz, y hasta la suma de $960.00 más $85.00 para intereses legales sobre dicha suma, y examinada dicha sentencia la cual es final y firme, el Tribunal accede y decreta el aseguramiento de la efectividad de la sentencia dictada a favor de la American Insurance Co. of Newark, New Jersey, sobre cualesquiera derecho, título o interés que tengan o pueda tener el señor Ramón Ruiz en la Póliza Núm. 62-11203 expedida por la 'Pacific Fire Insurance Co.', representada por 'Insular Underwriter Corp.', hasta la suma de $960.00 más $85.00 para intereses legales sobre esa suma, sin previa prestación de fianza por constar en documento auténtico la obligación.

"Se ordena a la 'Insular Underwriter Corp.', a sus agentes u oficiales para que retengan en su poder cualquier suma de dinero y hasta la cantidad antes mencionada."

Las partes se refieren a esta orden como una de embargo.   En realidad no se trataba de una orden de embargo, ya que el acreedor no tomó posesión de los bienes, sino de una retención de bienes del deudor en poder de un tercero (garnishment).   Aun cuando para la fecha en que sucedieron los hechos no había un estatuto que específicamente autorizara el "garnishment", este Tribunal lo había sancionado en ocasiones anteriores. Prado v. Quiñones, 78 D.P.R. 313 (1955); Arraiza v. Reyes y León, Interventor, 70 D.P.R. 614 (1949); Sierra v. Vieta, 56 D.P.R. 224 (1940); cf. Autoridad de Fuentes Fluviales v. Irizarry, 72 D.P.R. 644 (1951); Rodríguez v. Fontes y Am. R. R. Co., 51 D.P.R. 670 (1937); Diego Agüeros v. Heres, 50 D.P.R. 533 (1936); Bernardini v. Peña, 46 D.P.R. 393 (1934); U. S. Fire Ins. Co. v. Corte, 43 D.P.R. 194 (1932); M. Lamadrid & Co. v. Guerrero, 43 D.P.R. 994 (1932); F. L. de Hostos & Co. v. Madera, 43 D.P.R. 616 (1932).   La Regla 56.1 de las de Procedimiento Civil de 1958 (32 L.P.R.A., Supl., R. 56.1) que trata sobre los remedios provisionales se refiere específicamente al embargo de fondos en posesión de un tercero como una de las órdenes provisionales que el tribunal puede adoptar para asegurar la efectividad de la sentencia.

ficada a la Pacific y a Ruiz. ([3])    Como hemos visto, Ruiz no
incluyó como demandada a Pacific, que era la compañía que,
de acuerdo con el contrato de seguro había asumido el riesgo
de colisión, sino que por una inadvertencia dirigió su acción
contra Commercial.    No obstante, Ruiz y Commercial acor-
daron una estipulación para que se dictara sentencia por la
suma de $2,900.    El tribunal, en 11 de diciembre de 1956,
de conformidad con los términos de la estipulación, dictó sen-
tencia a favor de Ruiz por la suma indicada.    El mismo día
en que se dictó sentencia, uno de los abogados de Commercial,
quien a la vez era abogado de Pacific por pertenecer ambas
compañías al mismo grupo de aseguradoras y tener en Puerto
Rico el mismo agente—Insular Underwriters Corporation—
informó por teléfono a uno de los abogados de American que
se proponía consignar el importe de la sentencia en la secre-
taría del tribunal.    También lo notificó por telégrafo al otro
abogado de American, que tenía oficinas en Ponce.    El abo-
gado de Commercial y Pacific preparó una moción en 11 de
diciembre que remitió por correo a la secretaría del Tribunal
Superior, Sala de Ponce, en la cual hizo referencia a la orden
de retención que le había sido notificada y a la notificación
que había hecho a los abogados de American sobre su propó-
sito de consignar en Secretaría el importe de la sentencia

---

([3]) El mandamiento notificado a Pacific se limitaba a copiar la orden
de aseguramiento, pero el que se notificó a Ruiz lee como sigue:

"POR LA PRESENTE SE LE NOTIFICA A USTED que en cumplimiento de
un mandamiento de embargo librado por orden del Hon. Tribunal Superior
de P. R., Sala de Ponce y para asegurar la efectividad de la sentencia
dictada en este caso el 22 de abril de 1956, (sic) se ha embargado como de
la propiedad suya el siguiente bien:

'Cualesquiera derecho, título o interés que tenga o pueda tener usted
en la póliza núm. 62-11203 expedida por la 'Pacific Fire Insurance Co.'
representada por Insular Underwriter Corp., hasta la suma de $960.00 más
$85.00 para intereses legales sobre esa suma.'

"SE PREVIENE a usted que no podrá vender o enajenar o ceder cualquier
derecho o interés que pueda usted tener en dicha póliza y si lo hiciere se
presumirá o reputará dicha enajenación o cesión fraudulenta para todos
los efectos legales y además las personas responsables podrán ser casti-
gados por desacato."

dictada. En dicha moción solicitó del tribunal que se sirviera "admitir el cheque depositado en la secretaría conjuntamente con esta moción (⁴) como pago total del montante (*sic*) de la transacción en este caso". Esta moción aparece recibida y radicada a las 4:20 de la tarde del día 12 de diciembre. El mismo día 12, evidentemente antes de ser radicada la anterior moción de consignación, el abogado de Ruiz presentó una moción de consignación y retiro de fondos en la cual hizo constar que "*la parte demandada ha hecho entrega* al demandante de un cheque, importe de dicha suma de $2,900, en pago de dicha sentencia, pero haciendo dicho cheque pagadero a la orden del Secretario de este Tribunal", y solicitó se recibiera el cheque y a su vez se expidiera otro a la orden del demandante por la suma indicada. Así se proveyó. En esta forma Ruiz retiró *el importe total* de la sentencia, ignorándose los derechos que pudiera haber asegurado American mediante la orden de retención, que había sido notificada en forma legal, *Armour Fertilizer Co.* v. *Ramírez*, 52 D.P.R. 537 (1938), especialmente cuando no hay controversia sobre el hecho de que aunque la consignación se hizo por Commercial, los fondos pertenecían a Pacific y era ésta la única responsable del pago de la sentencia en virtud del contrato de seguro.

Como hemos dicho, Commercial presentó una moción en el pleito CS-56-736 para que se admitiera el cheque de $2,900 como pago total de la sentencia. Mientras tanto, American presentó una moción en el pleito CS-53-1737 dentro del cual había obtenido la orden de aseguramiento, para que se convocara a Pacific a mostrar causas por las cuales no debía responder del pago de la suma que se le ordenó retener. Ambas mociones se vieron conjuntamente. El día señalado para

---

(⁴) El cheque a que se hace referencia no se acompañó con la moción, sino que le fue entregado al abogado de Ruiz. El abogado de Commercial manifestó que ". . . el demandante ese mismo día se me fue detrás en el avión y quería su cheque" (T. E., pág. 4), y anteriormente había expresado que ". . . él (el abogado de Ruiz) rehusaba transigir si es que le iban a embargar esa suma."

la vista Pacific compareció y alegó que había quedado relevada de responsabilidad al notificar a los abogados de American que se disponía a consignar el importe total de la sentencia. Idéntica posición asume ante este Tribunal al indicar en su alegato que "no hay duda de que el embargo trabado por la American Insurance Company fue un embargo válido, pero ésta, a través de sus abogados, tuvo conocimiento de que hubo un error al contestar la Commercial Insurance Company la demanda incoada por Ramón Ruiz y fue notificada a tiempo de que había de hacerse una consignación de la suma estipulada por las partes, y que finalmente se depositó en la Secretaría del Tribunal Superior de Ponce. La apelante (American) tuvo oportunidad de intervenir con rapidez en el caso y no lo hizo." El tribunal de instancia resolvió que la Pacific "cumplió con la orden del tribunal al consignar el importe total de la sentencia dictada en 11 de diciembre de 1956, no viniendo obligada a responder al aquí compareciente (American) por no haber obtenido ésta el pago de la suma adeudádale". Contra esta resolución se interpuso recurso de apelación.

Procede la revocación.

Un ligero examen de la orden de aseguramiento dirigida a Pacific demuestra que específicamente se le requirió a través de su agente para que retuviera la cantidad que se adeudaba a American. Como no había contingencia o condición alguna sobre la existencia de la responsabilidad de Pacific bajo la póliza, y la controversia se limitaba al importe de los daños, no podía interponerse reparo alguno al cumplimiento de la orden de retención. *General Accident Fire & Life Ass. Corp.* v. *Mitchell,* 259 P.2d 862 (Colo. 1953) ; *Rodenkirk* v. *State Farm Mutual Automobile Ins. Co.,* 60 N.E.2d 269 (Ill. 1945) ; *Allor* v. *Dubay,* 26 N.W.2d 772 (Mich. 1947) ; cf. *Autoridad Fuentes Fluviales* v. *Irizarry,* supra; *Garnishment-Provisions in Insurance Policies Prohibiting Assignments,* 6 Rut L. Rev. 619 (1952). Claramente no se releva

de esta obligación meramente consignando en la secretaría del tribunal *la totalidad* del importe de la sentencia y notificando de este hecho a los abogados de American.    Es un principio general en esta materia que el acreedor que embarga bienes de su deudor en poder o posesión de un tercero se subroga en los derechos de éste. *In re Boyais Estate,* 146 A.2d 816 (Pa. 1958); *Krepsky* v. *Rothman,* 162 N.E.2d 597 (Ill. 1958); *Maybeno* v. *Battaglin,* 26 So.2d 315 (La. 1946). Cuando menos, si intentaba que la consignación del importe total de la sentencia la relevara de responsabilidad, ha debido acompañar el cheque a la moción que radicó poniendo en conocimiento del tribunal la existencia del aseguramiento decretado para evitar que al proveer en cuanto al retiro de fondos se violaran los derechos de American.    En otras palabras, al verificar el pago debe asegurarse que los derechos de la persona a cuyo favor se ordenó la retención queden protegidos. Cf. *Portland Ass'n. etc.* v. *Earley,* 254 P.2d 758, 762-763 (Wash. 1953); *Gainville Feed & Poultry Co.* v. *Waters,* 73 S.E.2d 771 (Ga. 1952); Nota 13 Notre Dame Law. 328 (1938).    Aparentemente ésta fue su intención, pero no lo hizo así, y por razones que desconocemos, prefirió entregar el cheque al demandante Ruiz quien prontamente actuó para evitar que el tribunal, al tener conocimiento de la orden de retención, no accediera al retiro de la totalidad de los fondos.    Merece nuestra reprobación enérgica la conducta observada por Ruiz al solicitar la entrega de la totalidad de los fondos cuando tenía conocimiento de la orden de retención dictada.    Las circunstancias que rodean todo este incidente son indicativas de que se trató deliberadamente de evitar que American cobrara lo que legítimamente se le adeudaba.    No constituye excusa alguna para ello que el pleito se iniciara contra Commercial y no contra Pacific como pretende insinuarse en la carta suscrita por el abogado de Ruiz, dirigida a uno de los

abogados de ambas compañías.(⁵)  Esta comunicación, si algo revela, es el conocimiento pleno que se tenía por ambos, el asegurado y su compañía, de toda la situación.

*Rocafort* v. *Cantero*, 31 D.P.R. 509 (1923), citado por el tribunal de instancia en respaldo de su resolución, es inaplicable.  No tiene el alcance pretendido de autorizar la consignación de determinada cantidad sobre la cual pesa una orden de aseguramiento, ignorando los derechos de la parte que obtuvo la orden.  Solamente sugiere que la consignación oportuna releva del pago de intereses.

Bajo los hechos expuestos resolvemos que Pacific no ha quedado relevada del cumplimiento de los términos de la orden de aseguramiento de 28 de agosto de 1956 dictada en el pleito civil CS-53-1737, y que, por tanto, responde a American de la suma de $960 y los intereses correspondientes, sin perjuicio de cualquier acción que tenga contra Ruiz para recobrar de éste la referida suma indebidamente retirada por él.

*Se dictará sentencia revocando la resolución apelada y devolviéndose el caso para ulteriores procedimientos no inconsistentes con esta opinión, y se impone además a la parte apelada el pago de la suma de $500 para honorarios de abogado.*

---

(⁵) Dicha carta, copiada a la letra, lee como sigue:

"En el día de hoy recibí el mandamiento de embargo en el asunto relacionado con el caso de epígrafe.  Por dicho mandamiento me entero que la orden del Tribunal va dirigida 'a la Pacific Fire Insurance Company, a sus agentes u oficiales'.  Ya que el caso nuestro va dirigido contra la Commercial Insurance Company, entiendo que no habría responsabilidad alguna de parte de ustedes en caso de dejar transigido el caso del epígrafe que nos ocupa, pues en síntesis, no hay ninguna orden dirigida a la Commercial Insurance Company.

"Ante la situación descrita, agradecería gestionaras la terminación definitiva de este asunto.  Si acaso ello no es posible, solicito de tí gestiones la contestación a la demanda para proseguir con nuestro pleito, pues mi cliente interesa la aceleración del mismo."