EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FAUSTO RAMOS QUIRÓS, JUEZ, demandado.

Número: O-69-127     Resuelto: 10 de febrero de 1970

*J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del peticionario.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Expedimos el auto en este caso para revisar la orden del tribunal de instancia de 27 de junio de 1968 dictada en ejecución de su sentencia de 18 de marzo de 1966 en el caso

Núm. 58-3611 de *Morales* v. *Metropolitan Construction Corporation*, con el fin de embargar "Cualesquiera bienes, por certificaciones, retención o concepto otro alguno que hayan que pagarse o se hallen depositados a nombre de Metropolitan Construction Corporation en el Departamento de Obras Públicas." Dicho embargo fue diligenciado mediante notificación al funcionario correspondiente en el referido departamento.

El Secretario de Justicia solicitó intervención en dicho caso "al solo efectó de solicitar la nulidad del embargo trabado y que en su día decrete la nulidad de dicho embargo en cuanto al E.L.A. respecta." Señalada la moción de intervención para vista, se declaró sin lugar en 25 de octubre de 1968, "Por no haber comparecido la parte promovente." A solicitud del Secretario de Justicia de que se dejara sin efecto la determinación anterior en vista de que el Secretario no fue notificado del señalamiento de la referida vista, y que se señalase otra vista sobre la moción de intervención, pues el Secretario "tiene sumo interés en que se discuta la moción de intervención", el tribunal de instancia dictó "No ha lugar."

Debe revocarse no tan sólo la orden de 25 de octubre de 1968 sino que también debe anularse el embargo trabado.

■ El tribunal de instancia debió dar al peticionario una oportunidad razonable de probar que no fue notificado del señalamiento de la vista sobre su moción de intervención. Por lo tanto incidió al negarle su petición para otra vista.

El embargo diligenciado en este caso no puede subsistir. Nos explicamos a continuación.

Se trata de un procedimiento de embargo en ejecución de sentencia mediante orden de retención de bienes en poder de un tercero—secuestro *(garnishment)*—procedimiento que está sancionado en esta jurisdicción. *Ruiz* v. *Commercial Insurance*, 83 D.P.R. 324, 326, escolio 2 (1961).

La doctrina de que los fondos públicos no pueden ser objeto de embargo se estableció por el Tribunal Supremo de los Estados Unidos en *Buchanan* v. *Alexander*, 45 U.S. 18—11 L.Ed. 857 (1864). De acuerdo con los hechos de este caso, se embargaron fondos en manos del pagador de la fragata Constitución en una acción en cobro de deudas de marinos de la misma. El pagador pagó a los marinos haciendo caso omiso del embargo. Se dictó sentencia en contra del pagador. Al revocar, el tribunal dijo que el embargo constituía una "desviación" de fondos públicos de su objeto apropiado y legítimo; que ningún gobierno puede sancionar esto—sería fatal al servicio público; que "Los fondos del gobierno se asignan específicamente para determinados propósitos nacionales y si tales apropiaciones pueden ser 'desviadas' y 'destruídas' mediante proceso estatal o de otra forma, el funcionamiento del gobierno puede ser suspendido. Mientras los fondos permanezcan en manos del oficial pagador, son fondos de Estados Unidos como si no se hubiesen sacado de la Tesorería. Hasta que se paguen por el agente del gobierno a la persona con derecho a los mismos, el fondo no puede ser considerado en derecho como parte de sus bienes. El pagador no es un deudor del marino."

En *Federal Housing Administration* v. *Burr*, 309 U.S. 242 (1940), la cuestión a resolver era si la Administración Federal de Hogares estaba sujeta a secuestro de fondos adeudados a un empleado contra el cual se había obtenido sentencia que se trataba de ejecutar mediante tal secuestro. El Juez Douglas determinó que la regla establecida en *Buchanan*, supra, se basa en el principio de que los Estados Unidos no pueden ser demandados sin su consentimiento. Por el contrario, dijo que la Administración fue autorizada a demandar y ser demandada y en tal virtud quedaba sujeta al proceso de secuestro. Resolvió el tribunal que la renuncia de inmunidad que concede el Congreso en el caso de las instrumentalidades federales debe interpretarse liberalmente;

que cuando el Congreso establece una agencia y la autoriza para dedicarse a transacciones comerciales con el público y le permite demandar y ser demandado no se puede asumir que deben inferirse restricciones a esa facultad; que debe establecerse con toda claridad, en casos como éste, que ciertos tipos de reclamaciones judiciales no son consistentes con el esquema nacional o estatutario de manera que una restricción implícita de la autoridad general debe hacerse para evitar una intervención grave con el cumplimiento de una función gubernamental y que, en ausencia de esta demostración, hay que presumir que al crear la agencia el Congreso tuvo el propósito de que estuviera sujeta a procesos judiciales en forma no menos extensa que una empresa particular bajo circunstancias similares; que la autoridad para demandar y ser demandada en su connotación normal incluye cualquier proceso civil accidental al comienzo o continuación de los procedimientos legales siendo el secuestro o el embargo corrientemente parte de dicho proceso para el cobro de deudas.

En *United States* v. *Krakover*, 397 F.2d 104 (10th Cir. 1967), se determinó que Estados Unidos no puede ser ordenado a pagar a un síndico bajo el Capítulo 13 de la Ley de Quiebras, parte de los sueldos de uno de sus empleados; que los Estados Unidos está inmune a ejecución y secuestro de acuerdo con *Buchanan*, supra; que lo que procedía en este caso era que se ordenase al empleado en quiebra que endosase los cheques de su sueldo y los entregase al síndico.

En *Sherwood* v. *United States*, 112 F.2d 587 (2d Cir. 1940), se trataba de una acción iniciada por un acreedor por sentencia de un tal Kaiser en contra de éste y de los Estados Unidos para recobrar daños que se alegan se adeudaban a Kaiser bajo un contrato para la construcción de un correo. Se inició esta acción bajo la Ley Tucker de acuerdo con la cual Estados Unidos consiente a ser demandado en deter-

minados casos. El acreedor, luego de obtener la sentencia en contra de Kaiser en el Tribunal Supremo de Nueva York obtuvo una orden de dicho tribunal, de acuerdo con un estatuto del estado, permitiéndole radicar la referida acción en contra de los Estados Unidos.

El Juez Clark sostuvo que el estatuto de Nueva York opera en forma de un secuestro y que la acción iniciada en este caso era procedente pues al consentir los Estados Unidos a que se le demandase en este tipo de caso, dicho consentimiento incluye el proceso de secuestro a menos que el estado indique una política en contrario o restricción en cuanto al remedio.

En *Weinstein, Bronfin & Heller* v. *Le Blanc*, 192 So.2d 130 (La. 1965), se trataba del secuestro del salario adeudado a un senador del estado de Louisiana. Un estatuto de dicho estado autorizaba el secuestro de sueldos, salarios, comisiones y otra compensación de empleados públicos o contratistas del estado y de sus agencias, juntas, comisiones, divisiones políticas, corporaciones públicas y municipales. No obstante, concluyó el tribunal supremo del estado que un senador es un funcionario, no un empleado del estado, de manera que la renuncia de la inmunidad al proceso de secuestro no alcanza el salario o emolumentos de un funcionario público. Dijo el tribunal, citando el caso de *Buchanan*, supra, que esta inmunidad no se pierde por el hecho de que los fondos para el pago del salario del senador habían sido segregados de los fondos generales y habrían de ser desembolsados por el presidente del comité de pagos de cada cámara de la Asamblea Legislativa estatal o mediante cheques individuales expedidos a los miembros de cada cámara.

En *State* v. *Allrid*, 425 P.2d 572 (Ariz. 1967), se sostuvo que en Arizona el estado está sujeto a secuestro en cuanto a salarios que adeuda a sus empleados y funcionarios. En este caso se trató de hacer un secuestro de fondos depositados en la Comisión de Carreras del Estado para garan-

tizar el pago de ciertos derechos. Cuando se gestionó el secuestro ya los derechos en cuestión habían sido satisfechos. Este procedimiento se produjo en una acción para cobrar una deuda de un hipódromo que había realizado el depósito en cuestión. Se concluyó que la autorización para el secuestro de salarios necesariamente excluyó al estado de estar sujeto a dicho procedimiento bajo otras circunstancias.

En *Brewington* v. *Brewington*, 386 S.W.2d 777 (Tenn. 1965), se trataba de trabar un secuestro sobre salarios adeudados a un empleado del estado pero no pagados todavía. El tribunal dijo que a menos que la Asamblea Legislativa manifieste su consentimiento expreso para un procedimiento de embargo, no se puede trabar un embargo sobre fondos públicos. En Tennessee el estatuto permitía el secuestro de salarios, sueldos y otra compensación adeudada por el estado, condado o municipio a cualquier funcionario o empleado. El tribunal resolvió que esto está limitado a acreedores por sentencia. No procedía en este caso pues se trataba de un divorcio en que la demandante trataba de hacer parte al estado en la acción como demandado como un medio de recobrar la cuantía de cualquier sentencia que obtuviere.

En *Star Manufacturing Employees Fed. Cr. U.* v. *Araújo*, 164 A.2d 309 (R.I. 1960), una asociación de crédito obtuvo sentencia en rebeldía en contra de un individuo y entonces solicitó que se procediera mediante secuestro contra el Tesorero General del Estado que poseía fondos adeudados al demandado. El tribunal concluyó que no procedía pues al no poderse demandar al estado sin su consentimiento, no puede demandársele indirectamente mediante el procedimiento de secuestro; que "Los funcionarios públicos están investidos de determinados deberes bien definidos y la ley prescribe la manera de cómo desempeñarlos. Si al así hacerlo un extraño interviene con el funcionario, el resultado necesariamente será la confusión y la inconveniencia."

En *Hilton* v. *Amburgey*, 96 S.E.2d 151 (Va. 1957), se trataba de un estatuto que permite el secuestro de salarios de funcionarios de cualquier ciudad, pueblo o condado y otro que permite este procedimiento en el caso de salarios de empleados del estado. Se resolvió que estos estatutos se refieren a personas empleadas por virtud de la autoridad municipal o condal o de la Asamblea Legislativa de manera que el sueldo de los funcionarios constitucionales como los alguaciles, secretarios de los tribunales, fiscales y comisionados de rentas que son puestos electivos, no están sujetos al procedimiento de secuestro. Véanse, además, *Nacy* v. *La Page*, 111 S.W.2d 25 (Mo. 1937); *Redwine* v. *Morgan*, 77 S.E.2d 330 (Ga. 1953); *Morgan* v. *Schmid*, 244 A.2d 825 (Conn. 1965); *Millstone Point Co.* v. *Rutka*, 244 A.2d 829 (Conn. 1966).

A continuación resumimos el estado de derecho en Puerto Rico sobre la cuestión bajo consideración.

En *F. L. Hostos & Co.* v. *Madera*, 43 D.P.R. 616 (1932), anulamos un embargo sobre el importe de la cantidad que debió ser pagada a un contratista constructor de cuatro escuelas por el Tesorero de Puerto Rico al entregarle aquél a éste una certificación expedida por el Comisionado de Obras Públicas por el importe de las obras realizadas por dicho contratista pues "el dinero para fines públicos no está sujeto a embargo", no obstante que "pueda ser demandado el Pueblo de Puerto Rico por daños y perjuicios." Esta determinación se basó en dictámenes similares de este tribunal en los casos de *Crédito y Ahorro Ponceño* v. *Colón*, 36 D.P.R. 341 (1927) (embargo de fondos de un contratista en poder de un municipio), y el de *Lamboglia* v. *La Junta Escolar de Guayama*, 15 D.P.R. 318, 328 (1909) (embargo de fondos depositados en un banco a favor de una junta por razón de alquileres vencidos de una casa escuela en Guayama).

La ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077), autoriza demandas contra el Estado Libre Aso-

ciado en (a) acciones por daños y perjuicios causados por acción u omisión de cualquier funcionario o empleado del estado o cualquier otra persona actuando en su capacidad oficial y dentro del marco de sus funciones, cargo o empleo interviniendo culpa o negligencia, (b) acciones para reivindicar propiedad mueble o inmueble o derechos sobre las mismas, y (c) acciones civiles que se funden en la Constitución o en cualquier ley de Puerto Rico o en cualquier reglamento de algún departamento o división del estado, o en algún contrato expreso o tácito con el estado.

Siguiendo la doctrina imperante, dijimos en *Escambrón Development Corp.* v. *E.L.A.*, 82 D.P.R. 685 (1961), que "Debemos interpretar la Ley 104 restrictivamente a favor del Estado y no podemos incluir en sus disposiciones otras acciones que no sean las que el legislador incluyó expresamente." Reafirmamos esta doctrina en *Jiménez* v. *El Pueblo*, 83 D.P.R. 201, 205 (1961). En *Montes* v. *Fondo del Seguro del Estado*, 87 D.P.R. 199, 206 (1963), dijimos que al considerar la responsabilidad del Estado en aquellos casos en que se le demande al amparo de la Ley Núm. 104, "debemos desligarnos de cualquier regla de interpretación estricta o liberal", es decir, que debemos dar toda la extensión a la renuncia que hace el estado de su tradicional inmunidad y por otro lado evitar limitar las disposiciones que establecen situaciones en las cuales el estado ha estimado conveniente retener su inmunidad.

Se arguye, sin embargo, que de acuerdo con lo dispuesto en la Regla 56.1 de las de Procedimiento Civil, en litigios entre particulares puede ordenarse el secuestro de fondos públicos disponibles para el pago de deudas del gobierno como, por ejemplo, cuentas a pagar a suplidores y sumas retenidas bajo contratos de construcción de obras públicas; que la doctrina establecida en los casos de *F. L. Hostos & Co.*, supra, y *Crédito y Ahorro Ponceño*, supra, se basó en las disposiciones de la antigua Ley Para Asegurar la Efec-

tividad de las Sentencias, de 1902 (32 L.P.R.A. sec. 1070), (¹) disposiciones que eran más restrictivas y no tenían el amplio alcance de la referida Regla.

La Regla en cuestión dispone que:

"En todo pleito, antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso, sin tomar en consideración, si, según el procedimiento anterior, el remedio era auxiliar a un pleito o si se obtenía por un pleito independiente. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dictará sentencia, según lo requiera la justicia sustancial."

---

(¹) El Art. 2 de la Ley Para Asegurar la Efectividad de las Sentencias disponía que:

"El aseguramiento de la sentencia se ajustará a las reglas siguientes:

"(a) Si la obligación reclamada fuere de dar cosa determinada poseída por el demandado o por un tercero a su nombre, se prohibirá al demandado, o tercero en su caso, la enajenación o gravamen de la cosa reclamada, hasta la resolución del pleito.

"(b) Si la obligación fuere de pagar una suma de dinero, el aseguramiento consistirá en el embargo de bienes bastantes del deudor para responder de las sumas reclamadas.

"(c) Si la obligación fuere de hacer, se embargará al obligado la suma necesaria para ejecutar la obra no hecha o realizada en contravención a lo pactado.

"(d) Si la obligación reclamada fuere de no hacer, el aseguramiento consistirá en prohibir al demandado que haga o continúe haciendo lo que trate de prohibirse con la demanda, apercibido de ser castigado por desacato o desobediencia y en el embargo de la suma necesaria para indemnizar por lo que se haga en contra del derecho del demandado.

"(g) En los casos precedentes, si se reclamaren daños y perjuicios, el aseguramiento podrá comprender, además, el embargo de bienes del demandado, en cantidad bastante a responder de los daños y perjuicios reclamados.

"(h) En lo no previsto en las reglas precedentes, el Tribunal discrecional y equitativamente adoptará las medidas procedentes para asegurar la efectividad de la sentencia."

■ No hay duda que el marco de acción bajo la Regla 56.1 es más amplio y flexible que bajo el estatuto anterior sobre la materia. No obstante, no es posible concluir que autoriza el embargo o secuestro de fondos públicos aun cuando éstos estén disponibles para el pago a acreedores del gobierno como son los suplidores y los contratistas de obras públicas, éstos últimos en cuanto a las cantidades retenidas para ser pagadas a la terminación y aceptación de las obras. La razón es que el embargo o secuestro de fondos públicos en estos casos constituye una "desviación" de fondos públicos y hasta que se paguen a la persona con derecho a recibirlos no pueden ser considerados en derecho como parte de los bienes de tal persona. De ahí que en otras jurisdicciones como aparece de los casos previamente comentados, cuando se ha determinado que los fondos públicos deben estar sujetos a embargo o secuestro así se ha dispuesto expresamente por legislación al efecto, el alcance de la cual, como hemos demostrado, ha sido limitada a los términos específicos de sus disposiciones.

En vista de que (a) el secuestro es un procedimiento civil; (b) no existe estatuto alguno en vigor en Puerto Rico que autorice el embargo o secuestro de fondos públicos en aseguramiento o ejecución de sentencias en contra de personas particulares; (c) el Estado normalmente no puede ser restringido en el uso de los fondos públicos mediante este procedimiento a menos que haya consentido en ello mediante legislación al efecto; (d) aun en las jurisdicciones donde la legislación permite el secuestro de fondos públicos, los tribunales han sido muy precisos en determinar el alcance de tal autorización; (e) ni la Ley Núm. 104 ni la Regla 56 de las de Procedimiento Civil autoriza el embargo o secuestro de fondos públicos en aseguramiento o ejecución de sentencias, *concluimos que la orden del tribunal de instancia de 27 de junio de 1968 que autorizó el secuestro de fondos*

*públicos, era improcedente y, por lo tanto, debe anularse y dejarse sin valor o efecto alguno.* (²)

El Señor Juez Presidente y el Juez Asociado Señor Santana Becerra no intervinieron. El Juez Asociado Señor Pérez Pimentel concurre en el resultado.

---

(²) No estamos resolviendo que no pueda ordenarse la consignación en el tribunal de instancia de cualquier cheque que el gobierno expida a favor del demandado, quedando la disposición de dicha suma a las resultancias del litigio.