Nancy Román Fonseca, peticionaria, *v.* Juan Antonio Ruiz Gutiérrez, su esposa Milagros Díaz Centeno y la Sociedad Legal de Gananciales compuesta por ambos, recurridos.

*Número:* CC-2002-942          *Resuelto:* 6 de agosto de 2003

*Roberto Vélez Báez*, abogado de la peticionaria; *Vivian I. Soto Guzmán*, abogada de los recurridos.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión de Tribunal.

Nos corresponde determinar la naturaleza de los fondos destinados al pago de anualidades futuras de un premio del sorteo de la Loto, y si están sujetos a embargo para asegurar una sentencia de división de bienes comunales.

I

Allá para 1984, la Sra. Nancy Román Fonseca (en adelante la peticionaria), quien entonces contaba con trece años de edad, comenzó una relación consensual con el Sr. Juan A. Ruiz Gutiérrez (en adelante el recurrido). A lo largo de esa relación, la pareja procreó seis hijos.

Tras nueve años de convivir con la peticionaria, en 1993 el recurrido adquirió un boleto para el sorteo de la Loto en una farmacia ubicada en el barrio Corcovada de Hatillo, lugar donde residía la pareja. El boleto resultó premiado por la cantidad de $5,888,198.50.

Luego de la pareja recibir el primer pago por la suma de $235,118.01,(1) acudieron a la sucursal del Banco Popular en Hatillo y abrieron una cuenta conjunta. Luego, los concubinos adquirieron una nueva casa en el referido pueblo, estipulándose en la escritura que les pertenecía a ambos a razón de cincuenta porciento.(2)

Ya establecidos en su nueva residencia, el recurrido trajo a su comadre, la Sra. Milagros Díaz Centeno (en adelante Sra. Díaz), a vivir en una pequeña casa ubicada en el solar de la nueva propiedad. El recurrido le informó a la peticionaria que la Sra. Díaz estaba enferma y que necesitaba que ella la atendiera. Sin embargo, el verdadero propósito de la mudanza fue que el recurrido pudiera convivir con ambas mujeres.(3) De hecho, en 1995 el recurrido se casó con la Sra. Díaz, teniendo la peticionaria que abandonar lo que había sido su casa por los últimos dos años.(4)

Así las cosas, la peticionaria presentó una demanda de

---

(1) La totalidad del premio se les pagaría en veinte anualidades de $235,118.01, luego de la deducción de $58,881.01 en concepto de contribuciones impuestas por ley a tales premios. Véase Apéndice, pág. 15.

(2) La nueva residencia tenía un valor de $120,000. Surge de los autos que antes de adquirir esa propiedad, la pareja vivía en condiciones infrahumanas, ya que el recurrido trabajaba como ordeñador de vacas en un establo, labor por la cual devengaba el salario mínimo. Véase Apéndice, pág. 15.

(3) Véase Apéndice, pág. 16.

(4) Íd.

división de comunidad de bienes, en la cual reclamó, *inter alia*, la mitad de la totalidad del premio de la Loto.(⁵) Luego de varios trámites procesales, el 9 de noviembre de 1999 el Tribunal de Primera Instancia (en adelante TPI) emitió una sentencia en la que resolvió que existió una comunidad de bienes entre la peticionaria y el recurrido, correspondiéndole a la primera la mitad del referido premio, lo que equivalía a la suma de $2,944,099.40.(⁶) Este dictamen lo confirmó el Tribunal de Circuito de Apelaciones (en adelante TCA). Mediante Resolución de 23 de abril de 2001, este tribunal resolvió con un "no ha lugar" la solicitud de *certiorari* que presentó el recurrido, bajo el número de caso CC–2001–118.(⁷)

Como parte de los trámites de ejecución de esa sentencia, la peticionaria presentó ante el TPI una moción para solicitar un embargo por la cantidad de $1,997,981.30,(⁸) cifra correspondiente a las anualidades futuras que aún se le adeudaban. Mediante Resolución de 19 de septiembre de 2002, el TPI emitió un "no ha lugar" a la referida moción.(⁹)

La peticionaria recurrió de ese dictamen ante el TCA, el cual confirmó al TPI. El foro apelativo fundamentó su decisión en el hecho de que los premios de la Loto constituyen fondos públicos hasta el momento en que se le desembolsan al ganador, por lo que no se puede trabar un embargo sobre ellos.

Inconforme, la peticionaria acude ante este Tribunal y formula el señalamiento de error siguiente:

---

(⁵) La demanda se presentó el 8 de mayo de 1996, ante el Tribunal de Primera Instancia, Sala Superior de Arecibo. Véase Apéndice, pág. 13.

(⁶) Véase Apéndice, pág. 13.

(⁷) Debido al trámite apelativo que se estaba llevando a cabo, la Lotería Electrónica consignó en la Secretaría del Tribunal de Primera Instancia las anualidades correspondientes al 2000, 2001 y 2002. Además, para agosto de 2002 se le pagó a la peticionaria la parte que le correspondía de las anualidades vencidas según la Sentencia de 9 de noviembre de 1999. Véase Petición de *certiorari*, pág. 4.

(⁸) Véase Apéndice, pág. 9.

(⁹) Íd., pág. 11.

Erró el Tribunal de Circuito de Apelaciones al concluir que los Premios de la Lotería Electrónica constituyen fondos públicos hasta el momento en que son desembolsados al ganador.

Mediante Resolución de 21 de febrero de 2003, le concedimos al recurrido un término de veinte días para que mostrara causa por la cual no debíamos modificar la Resolución del TCA, a los efectos de que el pago de las anualidades de la Loto, a su vencimiento, se consignen en el tribunal.

El recurrido compareció el 2 de abril de 2003. Atendidos los planteamientos de las partes, resolvemos según intimado.

## II

■ La Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que

[e]n todo pleito *antes o después de sentencia,* por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, *o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso.* En todo caso en que se solicite un remedio provisional, *el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial.* (Énfasis suplido.)

Nuestro ordenamiento jurídico establece el citado procedimiento con el propósito de asegurar la efectividad de las sentencias y reivindicar así, no sólo la justicia debida a las partes, sino también la dignidad de la función judicial. *Stump Corp. v. Tribunal Superior,* 99 D.P.R. 179 (1970). Así, pues, la facultad que confiere la referida Regla 56.1 de Procedimiento Civil es un claro reconocimiento del interés social en que se provean remedios adecuados para el cobro

de deudas y reclamaciones, lo que resulta fundamental en una economía como la nuestra, con amplio fundamento en el crédito personal. *Stump Corp. v. Tribunal Superior*, supra, pág. 184. En atención a esto, las disposiciones que proveen para ese aseguramiento se deben interpretar con amplitud y liberalidad, concediéndose aquella que mejor asegure la reclamación y menos inconvenientes ocasione al demandado. *M. Quilinchini Sucrs., Inc. v. Villa Inv. Corp.*, 112 D.P.R. 322 (1982); *Freeman v. Tribunal Superior*, 92 D.P.R. 1 (1965).([10])

■ De este modo, la regla provee una serie de remedios para asegurar la efectividad de las sentencias dictadas, entre los cuales se encuentra el embargo. *Vargas v. González*, 149 D.P.R. 859 (1999). Ahora bien, nuestra jurisprudencia impone unas limitaciones especiales al ejercicio de este remedio cuando los fondos que se pretenden retener son públicos.

■ Sobre este particular, hemos expresado con carácter general que no procede el embargo o secuestro de fondos públicos para asegurar el cumplimiento de un obligado por sentencia, aun cuando éstos estén disponibles para el pago a acreedores del Gobierno. *E.L.A. v. Tribunal Superior*, 98 D.P.R. 524, 533 (1970). El raciocinio que subyace a esta postura es que, de permitirse el embargo de fondos públicos para esos fines, se estarían desviando para propósitos no públicos. Íd. Además, hemos resuelto que las actividades gubernamentales no deben estar sujetas a las inconveniencias de estos procedimientos que interfieren con el descargo de funciones públicas en detrimento del bien común. *Stump v. E.L.A.*, supra, pág. 181.

Como consecuencia, hasta que la agencia gubernamental concernida pague esos fondos a la persona con derecho a recibirlos, o hasta que ésta venga obligada a realizar el

---

([10]) Véase, además, R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de Puerto Rico, 1997, pág. 125.

pago debido al vencimiento del término para realizarlo, tales dineros no se pueden considerar en derecho como parte de los bienes de tal persona. *Stump Corp. v. Tribunal Superior,* supra. Mientras que, en casos de contratistas o suplidores del Gobierno, se entiende que los fondos le pertenecen a éstos a partir del momento en que se terminó la obra y el Gobierno la acepta. Íd., pág. 184.

■ Finalmente, y a modo de atemperar lo anteriormente explicado con los propósitos de la citada Regla 56.1, *supra,* hemos facultado a los tribunales de instancia para ordenar la retención o el envío al tribunal de los fondos públicos comprometidos, una vez estos advienen propiedad del obligado; es decir, cuando la obra que éste realizó aquél la acepta, o al vencimiento de la obligación que tiene el Estado con el obligado. Íd.

Conforme a este estado de derecho, resolvemos la controversia de autos.

## III

La peticionaria alega que los premios de la Loto no son fondos públicos por no ser parte del Fondo General, y que por ende son susceptibles de ser embargados.[11] Sostiene también que desde que se certifican los números del sorteo como premiados, el dueño del boleto ganador se constituye en su acreedor, y adviene con un derecho propietario sobre éste.[12] No tiene razón la peticionaria.

■ Sabido es que ciertos fondos pueden ser públicos, independientemente de que no pasen a formar parte del presupuesto general del Estado. *Librotex, Inc. v. A.A.A.,* 138 D.P.R. 938, 941 (1995); *Commoloco of Caguas, Inc. v. Benítez Díaz,* 126 D.P.R. 478, 493 (1990). Así, pues, si los fondos en cuestión responden a "propósitos de utilidad pú-

---

[11] Véase Apéndice, pág. 6.
[12] Íd.

blica", se considerarán públicos, estén consignados o no dentro del Fondo General. *Librotex, Inc. v. A.A.A.*, supra, pág. 941.

En este caso tenemos que el Reglamento Operacional de la Lotería Adicional, Reglamento Núm. 4588 del Departamento de Hacienda de 15 de noviembre de 1991, en su Sec. 4.8, establece que

> [l]os premios del juego de Loto se establecen asignando una cantidad sustancial del total de las ventas para cada sorteo y pagando éstos en anualidades o plazos durante un periodo determinado de tiempo. *El pago de premios a plazos permite invertir cantidades en efectivo por un término de años, ganar intereses sobre dichos fondos y pagar el principal e interés acumulado a los ganadores.*
>
> La Lotería Electrónica será el agente fiduciario de la persona ganadora de un premio que deba pagarse mediante el sistema de anualidades. Esto permitirá mantener controles adecuados sobre los pagos anuales a los ganadores y sobre el cobro de la contribución sobre premios, a la vez que se asume la responsabilidad con el ganador por el pago de la cantidad total del premio.[13]

Como se puede observar, el mecanismo de pago en anualidades —que era el único modo de pago que operaba al momento de los hechos en controversia— persigue hacer de la Lotería Electrónica, en la mayor extensión posible, una entidad autofinanciada. Es decir, que al depositar la cantidad correspondiente a un premio particular, la Lotería Electrónica pretende ganar unos intereses que luego utiliza, tanto para pagar las anualidades del premio en

---

[13] El Reglamento Operacional de la Lotería Adicional, Reglamento Núm. 4588 del Departamento de Hacienda de 15 de noviembre de 1991, fue enmendado por el Reglamento Núm. 6551 del mismo departamento, efectivo desde el 25 de junio de 2002. El Reglamento Núm. 6551 establece las normas que regirán la operación del Sistema de Lotería Adicional y las normas relacionadas al costo de las apuestas, monto de los premios, forma de pago de los premios, transmisión de sorteos, probabilidades de ganar un premio, jugadas para sorteos por adelantado, tipos de apuestas y otros procedimientos relacionados a los nuevos juegos electrónicos de lotería, tales como Pega–2, Pega–4 y Loto con Revancha. *Este reglamento no altera el mecanismo que busca hacer de la Lotería Electrónica un ente autofinanciado.* Véase Sec. 4.8 del Reglamento Núm. 6551, *supra*.

cuestión como para allegar fondos para sufragar otros aspectos de su funcionamiento. Asimismo, el pago en anualidades le permite al Estado asumir mayor control sobre los pagos que efectúa y sobre el cobro de la contribución que se le impone a estos premios. Por lo tanto, aunque los fondos depositados para satisfacer un premio de la Loto no pasan al Fondo General del Estado, siguen teniendo un fin público, por lo que no son embargables hasta la fecha de vencimiento de la anualidad correspondiente.

Sin embargo, a pesar de que la peticionaria no puede obtener un embargo sobre las anualidades futuras para que se le asegure la entrega de su parte del premio, eso no significa que no podamos tomar otras providencias para atender su reclamo. Según explicáramos en *Stump Corp. v. Tribunal Superior*, supra, la citada Regla 56.1 de Procedimiento Civil faculta a los tribunales a ordenar, como medida provisional en aseguramiento de sentencia, la retención o el envío al tribunal de los fondos públicos comprometidos, *una vez proceda pagarlos*. En este caso, ese momento se verifica al vencimiento de cada anualidad, ya que es en esa instancia que la Lotería viene en la obligación de pagar el importe procedente; es decir, a esa fecha los fondos destinados al pago de esa anualidad dejan de ser públicos y entran al patrimonio negociable de la parte ganadora.

En este caso, la peticionaria y el recurrido son acreedores en partes iguales del premio. Sin embargo, el Reglamento Operacional de la Lotería Adicional dispone que el premio se le entregará únicamente a una persona.[14] Por lo tanto, existe temor de parte de la peticionaria que si le hace el pago al recurrido, su expectativa de recibir la parte que por sentencia de un tribunal le corresponde podría verse afectada de alguna forma.

Balanceando los intereses de todas las partes concerni-

---

[14] Reglamento Operacional de la Lotería Adicional, Reglamento Núm. 4588 de 15 de noviembre de 1991, Departamento de Hacienda, Sec. 4.6.

das, y conforme a lo dispuesto en los párrafos anteriores, resolvemos que procede que se ordene al Director del Negociado de la Lotería de Puerto Rico a realizar el pago de las anualidades que aún se le adeudan a las partes aquí comparecientes, a su vencimiento, consignándolo ante el TPI. Este proceder protege el interés público involucrado, como también asegura que se satisfaga el derecho de la peticionaria a recibir la mitad del premio, según lo dispuesto mediante una sentencia válida.

## IV

Por los fundamentos expuestos en las secciones precedentes, *se expide el auto y se devuelve el caso al TPI para que le ordene al Director del Negociado de la Lotería de Puerto Rico que proceda a consignar las anualidades correspondientes al premio de la Loto del cual la peticionaria es cotitular, a su vencimiento, ante ese tribunal. Así modificada, se confirma la sentencia del TCA.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.