EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Engineering Services International, Inc.<br><br>Recurrida<br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 84<br><br>209 DPR \_\_\_\_ |

Número del Caso:  CC-2020-640


Fecha: 29 de junio de 2022


Tribunal de Apelaciones:

    Panel V


Abogada de la parte peticionaria:

    Lcdo. Charles Bimbela Quiñones
    Lcda. Victoria D. Pierce King


Abogada de la parte recurrida:

    Lcda. Liana Colón Valentín



Materia: Obligaciones y Contratos y Procedimiento Civil-Razonabilidad de los remedios provisionales dictados en aseguramiento de sentencia ante los cambios fácticos en el contexto de un contrato de construcción de obra.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Engineering Services International, Inc.

     Recurrida

       v.

CC-2020-0640

Autoridad de Energía Eléctrica de Puerto Rico

     Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 29 de junio de 2022.

Nos corresponde determinar, en el contexto de un contrato de construcción de obra entre una corporación pública y un contratista, si las órdenes del tribunal para hacer ciertos actos específicos fueron adecuadas y razonables. Resolvemos que ante los cambios fácticos, los remedios provisionales dictados en aseguramiento de sentencia dejaron de ser adecuados e idóneos. Específicamente, concluimos que el fin de una relación contractual puede ser, como lo fue en este caso, un cambio en las circunstancias que amerita dejar sin efecto las medidas provisionales.

El Tribunal de Apelaciones se equivocó al confirmar las resoluciones del foro primario, y en

consecuencia dejar en efecto las órdenes provisionales al amparo de la Regla 56 de Procedimiento Civil, infra.

I

Mediante un proceso de subasta, la Autoridad de Energía Eléctrica (Autoridad) requirió el diseño y construcción del *Advanced Water Treatment System San Juan Steam Plant* (Proyecto) para el tratamiento del agua a utilizarse en las unidades generatrices de la Central San Juan. La Autoridad adjudicó la buena pro de la subasta a Engineering Services International, Inc. (Engineering Services). Así, el contrato de construcción se firmó el 28 de octubre de 2016.

No obstante, durante el proceso de construcción surgió una discrepancia en cuanto a la instalación de las bombas que se utilizarían. Engineering Services entendía que se utilizarían las bombas existentes, mientras que la Autoridad condicionó la continuación del Proyecto a que se proveyeran cuatro bombas nuevas. Tras varios sucesos, Engineering Services presentó una demanda sobre sentencia declaratoria contra la Autoridad. Posteriormente en la demanda enmendada, solicitó: que se declarara que según el contrato no tenía que proveer unas bombas nuevas; una extensión de tiempo de 317 días; la eliminación de ciertas multas que le impuso la Autoridad; que se ordenara a la Autoridad crear las condiciones necesarias para conectar el Proyecto a las bombas existentes, y que se liberara el retenido del contrato.

Tras múltiples incidentes procesales, la Autoridad presentó una solicitud de remedios provisionales. Suplicó que se ordenara a Engineering Services instalar las bombas según requeridas y continuar los trabajos. En la alternativa, rogó un interdicto preliminar con el mismo propósito.

Para atender la petición de la Autoridad, se celebraron varias vistas evidenciarias. Por su parte, Engineering Services solicitó, en corte abierta, el remedio provisional de que se le permitiera conectar el Proyecto a las bombas existentes mientras continuaba el pleito.

En el interín, el 24 de octubre de 2019 la Autoridad canceló el contrato en controversia. A su vez, Engineering Services peticionó al foro primario que dejara sin efecto la cancelación en aras de asegurar la sentencia que en su día recayera. Así, el 22 de noviembre de 2019 ese foro emitió una resolución (Resolución 1) en la que denegó el interdicto preliminar que solicitó la Autoridad, y confirió el remedio provisional a Engineering Services.

Inconforme, la Autoridad presentó una solicitud de reconsideración para que esta resolución se dejara sin efecto. Sin embargo, el Tribunal de Primera Instancia denegó la reconsideración y mediante resolución (Resolución 2) decretó que se dejara sin efecto la declaración de incumplimiento de contrato, para que se pudiera cumplir con el remedio provisional previamente dictado. El foro primario explicó que permitir la cancelación equivaldría a una

adjudicación en los méritos de que Engineering Services abandonó la obra –una de las controversias principales-. Ese mismo día la Autoridad recurrió ante el Tribunal de Apelaciones mediante un recurso de certiorari, KLCE2019-01701.

Luego de varios incidentes procesales, el **3 de febrero de 2020** Engineering Services presentó una *Moción de desacato y para remedio* ante el Tribunal de Primera Instancia. Arguyó que la Autoridad violentó las resoluciones del Tribunal, pues se negó a suscribir una enmienda para que el contrato siguiera vigente más allá del 31 de diciembre de 2019. La Autoridad se opuso y adujo que la fecha de vigencia del contrato era hasta el 31 de diciembre de 2019 por lo que este expiró por sus propios términos, razón independiente al posible incumplimiento de Engineering Services. Además, recurrió nuevamente ante el Tribunal de Apelaciones mediante certiorari, KLCE202000151.

El 11 de mayo de 2020, el Tribunal de Primera Instancia notificó una resolución (Resolución 3) en la que recalcó que la Autoridad debía firmar cualquier documento, permiso, endoso, o extensión que fuera necesario para cumplir las órdenes del tribunal. Subrayó que no permitiría ninguna acción u omisión voluntaria de la Autoridad que buscara tornar académicas las controversias para afectar su jurisdicción.

Más tarde, Engineering Services alegó nuevamente ante el Tribunal de Primera Instancia que no se le permitió

cumplir con el remedio provisional, por lo que requirió que se decretara que el contrato estaría vigente mientras se dilucidaba el pleito. Por su parte, la Autoridad sostuvo que el contrato venció y que estaba impedida de suscribir un contrato retroactivo porque es una corporación pública.

El 29 de junio de 2020 el Tribunal de Primera Instancia ordenó a las partes que se reunieran para discutir y suscribir los documentos, endosos, permisos o gestiones específicas necesarias para cumplir con las órdenes anteriores (Resolución 4). Destacó que no se trataba de una orden para dar vigencia retroactiva al contrato y que no existía prohibición para que se firmara un nuevo documento para cumplir con el remedio provisional.

Una vez más, la Autoridad recurrió al Tribunal de Apelaciones para la revisión de estas resoluciones mediante un recurso de certiorari, KLCE2020000477. Arguyó que el foro primario no podía obligar a firmar un contrato o extender retroactivamente la vigencia de uno. El 12 de noviembre de 2020 el Tribunal de Apelaciones, mediante sentencia, atendió todos los recursos pendientes en el caso y confirmó los dictámenes recurridos. Respecto a la cláusula del contrato que permitía la cancelación unilateral por la Autoridad, reconoció que esta era válida, pero razonó que la actuación de la Autoridad de intentar cancelar el contrato era nula y representaba una intervención indebida en su función adjudicativa. Además, concluyó que el Tribunal de Primera

Instancia no fue arbitrario ni abusó crasamente de su discreción al ordenar la conexión como medida provisional.

El 14 de diciembre de 2020, la Autoridad presentó ante nos un recurso de certiorari. En síntesis, reiteró que: (1) la terminación por incumplimiento fue de acuerdo con el contrato; (2) el remedio provisional era académico por la cancelación y posterior expiración del contrato; (3) la orden para enmendar retroactivamente la vigencia del contrato era nula, y (4) el remedio provisional otorgado era contrario a la letra expresa del contrato.

Expedido el auto y con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

A. Remedios provisionales

La Regla 56 de Procedimiento Civil, 32 LPRA Ap. V, contiene una lista no taxativa de los posibles remedios en aseguramiento de sentencia, en todo tipo de pleito indistintamente de la naturaleza de la obligación en controversia. Citibank et al. v. ACBI et al., 200 DPR 724, 732 (2018); Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., 173 DPR 304, 317 (2008). En lo pertinente, la Regla 56.5 de Procedimiento Civil, supra, regula las órdenes para hacer o desistir de hacer cualquier acto específico. El tribunal podrá dictar una orden para que la parte contra la que se solicita haga o desista de hacer actos específicos necesarios para que la sentencia sea efectiva en su día y se pueda hacer justicia en el caso. R. Hernández Colón, Derecho

<u>procesal civil</u>, 6ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 191.

Las medidas cautelares están predicadas en la facultad inherente de los tribunales para estructurar remedios que protejan su jurisdicción y eviten un fracaso de la justicia. <u>Misión Ind. P.R. v. J.P. y A.A.A.</u>, 142 DPR 656, 678 (1997). Recuérdese que el Art. 2.017 de la Ley de la Judicatura, 4 LPRA sec. 240, reconoce la facultad que tienen los jueces para hacer cumplir sentencias, órdenes y providencias en acciones o procedimientos pendientes. Hay que mencionar, además, que el tribunal puede compeler al cumplimiento de las órdenes cautelares mediante su poder de desacato civil. Regla 56.8 de Procedimiento Civil, <u>supra</u>.

El tribunal en su amplia flexibilidad y discreción concederá la medida provisional si juzga justificadas las razones, antepuesta una moción por la parte interesada a esos efectos. J. Cuevas Segarra, <u>Las medidas cautelares y la ejecución de sentencia</u>, 1ra ed., Barcelona, Ed. Bosch, 2020, pág. 173. Véase: <u>Citibank et al. v. ACBI et al.</u>, <u>supra</u>, pág. 732; <u>Nieves Díaz v. González Massas</u>, 178 DPR 820, 839 (2010). "Asegurar una sentencia no es ejecutarla y en cierto modo es preservar el *status quo* que existía antes de dictarla". J. Cuevas Segarra, <u>Tratado de derecho procesal civil</u>, 2da ed., San Juan, Pubs. JTS, 2011, T. V, pág. 1595. Igualmente, estas medidas son esencialmente instrumentales y proporcionales, pueden modificarse, ampliarse, sustituirse por otras o dejarse sin efecto en cualquier momento. <u>Las medidas</u>

cautelares y la ejecución de sentencia, op. cit., pág. 47. En todos los casos en que se solicite un remedio de esta naturaleza, se debe conceder la medida que mejor asegure la reclamación del demandante y que menos inconvenientes ocasione al demandado. Román v. S.L.G. Ruiz, 160 DPR 116, 120 (2003).

Para conceder o denegar el remedio en aseguramiento de sentencia, el tribunal evaluará que: (1) el remedio sea provisional; (2) tenga el objetivo de asegurar la sentencia que en su día recaiga, (3) se consideren los intereses de las partes, según lo requieran la justicia sustancial y las circunstancias del caso. Scotiabank v. ZAF Corp. et al., 202 DPR 478, 489 (2019); Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 13 (2016); Nieves Díaz v. González Massas, supra. Claro está, el tribunal está limitado a que la medida sea razonable y adecuada para garantizar la efectividad de la sentencia que pudiera dictarse. Citibank et al. v. ACBI et al., supra, pág. 733; BBVA v. S.L.G López, Sasso, 168 DPR 700, 708 (2006); F.D. Rich Co. v. Tribunal Superior, 99 DPR 158, 176 (1970).

Como se aprecia, los remedios provisionales tienen el componente intrínseco de la discreción judicial. Esto conlleva que las decisiones en ese ámbito merecen gran deferencia. Citibank et al. v. ACBI et al., supra, pág. 736. "Cuando de la discreción de los tribunales se trata, los foros apelativos, como regla general, no intervendrán a no ser que las decisiones emitidas resulten arbitrarias o en un

abuso de su discreción". <u>VS PR, LLC v. Drift-Wind</u>, 2021 TSPR 76, 207 DPR __ (2021). Véase, <u>Meléndez v. Caribbean Int'l. News</u>, 151 DPR 649, 664 (2000).

Debido a las consecuencias reales que puede tener, la limitación autoimpuesta de no sustituir el criterio utilizado por el foro primario en el ejercicio de su discreción no es un obstáculo para que los tribunales apelativos revisen esas determinaciones. <u>Umpierre Matos v. Juelle Abello</u>, 203 DPR 254, 276 (2019). Esta limitación debe ceder ante prejuicio o parcialidad y equivocaciones en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. <u>Íd</u>., págs. 275-276. Asimismo, en el contexto de remedios en aseguramiento de sentencia, hemos dispuesto que el ejercicio de la facultad revisora apelativa solo será meritorio cuando el foro primario no se rija por el criterio de razonabilidad y adecuación, o cuando no considere los intereses de ambas partes según lo requieren las circunstancias del caso y la justicia sustancial. <u>Citibank et al. v. ACBI et al.</u>, <u>supra</u>, pág. 736.

El Tribunal de Primera Instancia determinó preliminarmente que la conexión del Proyecto a las bombas existentes era el mejor remedio en aseguramiento de sentencia porque no causaba perjuicio a las partes y permitía que el Proyecto estuviera en funcionamiento lo más pronto posible, ahorrando $69,000 mensuales a la Autoridad. El foro apelativo intermedio confirmó esta determinación.

Inicialmente, la medida interdictal concedida, no parece irrazonable de su faz, bajo el crisol de amplia flexibilidad y discreción que cobija al tribunal. Incluso, **este remedio se dictó mientras el contrato entre las partes estaba vigente.**

Aclarado este aspecto de umbral, veamos si el remedio concedido por el tribunal de instancia **aún** procede en derecho.

B. Cláusula resolutoria unilateral en el contrato de obra

El primer señalamiento de error nos lleva a evaluar dos acontecimientos importantes: (1) la cancelación del contrato y (2) el vencimiento del contrato. Primero, el 24 de octubre de 2019, **antes** de que el tribunal concediera el remedio provisional, **la Autoridad notificó la resolución del contrato** (*contract termination*) por el presunto abandono por parte de Engineering Services. Ante esto, el foro primario ordenó a la Autoridad dejar sin efecto la notificación de resolución, para que se cumpliera con su orden previa. Con esto en mente, resulta insoslayable hacer referencia a la naturaleza del contrato otorgado por las partes.

Según el Art. 1434 del derogado Código Civil de 1930, 31 LPRA sec. 4013, aplicable al contrato entre las partes, mediante el arrendamiento de obras una de las partes se obliga a ejecutar una obra por un precio cierto. Un concepto similar se mantuvo en el Art. 1367 del Código Civil de 2020, 31 LPRA sec. 10251. Véase: <u>Master Concrete Corp. v. Fraya,</u>

S.E., 152 DPR 616, 624 (2000); Constructora Bauzá, Inc. v. García López, 129 DPR 579, 592 (1991). Se trata de un contrato de cumplimiento o tracto sucesivo, en el que el trabajo es divisible y estimable. J. R. Vélez Torres, Curso de derecho civil, Derecho de contratos, 1ra ed., San Juan, Ed. Revista Jurídica de la Universidad Interamericana de Puerto Rico, 1990, T. IV, Vol. II, pág. 371. La obligación principal de la parte generalmente denominada "contratista" es la ejecución de una obra nueva o la reparación de una existente. Íd., págs. 331-332. Especialmente, no se puede obligar al contratista a hacer una cosa, por lo que el dueño solo tiene el recurso de la resolución, acompañada de los correspondientes daños. Íd., pág. 371.

Hemos reconocido que las partes pueden pactar una cláusula resolutoria unilateral, que le confiera a una sola de ellas la facultad de poner fin a la relación contractual por su mera voluntad, esto en perfecta armonía con el principio de *pacta sunt servanda*. Rodríguez García v. UCA, 200 DPR 929, 943-944 (2018); Mun. de Ponce v. Gobernador, 136 DPR 776, 789 (1994); Flores v. Municipio de Caguas, 114 DPR 521, 529 (1983). Específicamente, en los contratos de construcción de obras, el dueño o comitente tiene la facultad de desistir unilateralmente. Art. 1486 del Código Civil de 1930, 31 LPRA sec. 4127 (derogado). Véase, además: e.g., Art. 1380 del Código Civil de 2020, 31 LPRA sec.10285. Esto es posible aun cuando la construcción comenzó, pero con la salvedad de que se indemnice al contratista. Art. 1486 del

Código Civil de 1930 (derogado), supra. Véase, además: e.g., Art. 1380 del Código Civil de 2020, supra. Así pues, no es incompatible armonizar el interés, la conveniencia o la necesidad del dueño con los derechos ganados del constructor, ya que estos últimos son fácilmente resolubles y compensables monetariamente. Vélez Torres, op. cit., pág. 371.

Está plenamente fundado que no se exige condición alguna para que el comitente pueda desistir "ya que ha de indemnizarse al contratista de todos sus gastos, trabajo y hasta de la utilidad que pudiera obtener de la construcción de la obra, de tal forma que en realidad para éste es, desde un punto de vista pecuniario, igual que si se hubiese terminado". R. Ramírez Pabón, Obligaciones y contratos: según el Código Civil y leyes complementarias vigentes en Puerto Rico, [s. ed], Río Piedras, Ed. Clavell, 1969, pág. 198.

En este caso, el Art. 19 del contrato disponía que la Autoridad, si lo entendía en su mejor interés, en cualquier momento, podía resolver o cancelar el contrato previa notificación al contratista con no menos de 30 días de anticipación. Esta primera parte del artículo contiene la facultad del organismo gubernamental para terminar unilateralmente el contrato, lo que nuestro ordenamiento civil reconoce a los dueños de obras. El artículo también establecía que a la Autoridad le era posible resolver, cancelar o rescindir el contrato inmediatamente, sin

notificación previa, si el contratista incumplía con alguna de las obligaciones pactadas.

Como vemos el Art. 19 contenía dos normas contractuales que regulaban dos supuestos de hechos distintos. La primera parte sistematiza el supuesto de la facultad de la Autoridad para resolver unilateralmente el contrato de obra. En cambio, la segunda parte operaría si Engineering Services incumple sus obligaciones bajo el contrato.

En virtud de esta segunda parte, la Autoridad canceló el contrato inmediatamente. El tribunal para salvaguardar su jurisdicción y el ejercicio de su función adjudicativa ordenó a la Autoridad que dejara sin efecto la cancelación del contrato. No vemos porqué sustituir el criterio del foro de primera instancia. El incumplimiento del contrato, razón en la que la Autoridad fundamentó la cancelación, es una de las controversias principales del caso. La propia Autoridad solicitó al tribunal que ordenara a Engineering Services desistir de interferir con el contrato y terminar el Proyecto. Además, la Autoridad planteó como defensa afirmativa y pidió como remedio el cumplimiento de la obligación. El Tribunal de Apelaciones no cometió error al confirmar este proceder.

Sin embargo, esto no dispone por completo de la controversia ante nosotros. Debemos considerar el segundo acontecimiento importante: **la vigencia del contrato, según sus enmiendas, expiró el 31 de diciembre de 2019**. Para esto

es necesario examinar el marco jurídico aplicable al ámbito de la contratación gubernamental.

C. Contratación gubernamental

Sabemos que, en todo caso, "[l]a facultad de contratación del Gobierno de Puerto Rico y de sus entidades, está limitada por las normas estatutarias y jurisprudenciales respecto a la sana administración pública". Génesis Security v. Depto. Trabajo, 204 DPR 986, 998-999 (2020). Véase, Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 429. Por eso, los contratos con el Gobierno deben cumplir rigurosamente los requisitos de: (1) reducirse a escrito; (2) mantener un registro fiel para establecer su existencia *prima facie*; (3) remitir copia a la Oficina del Contralor a fin de una doble constancia de su otorgamiento, términos y existencia, y (4) acreditar que se realizó y otorgó 15 días antes. Vicar Builders v. ELA et al., 192 DPR 256, 264 (2015); Rodríguez Ramos et al. v. ELA et al., supra, págs. 461-462. Véase, además: Demeter Int'l v. Srio. Hacienda, 199 DPR 706, 729 (2018).

En lo pertinente, el marco estatutario de la Autoridad recoge que los contratos para la construcción de obras se acordarán luego de un anuncio de subasta. Ley Núm. 83 de 2 de mayo de 1947, según enmendada, "Ley de la Autoridad de Energía Eléctrica de Puerto Rico", 22 LPRA sec. 191. A tales efectos, su Reglamento de subastas de 10 de septiembre de 2014, Reglamento Núm. 8518, regula el proceso de adjudicación de subastas y concesión de contratos.

Hemos expresado claramente que en el ámbito gubernamental, nuestro ordenamiento prohíbe todo intento de contratación retroactiva. Íd., pág. 1006; Jaap Corp. v. Depto. Estado et al., 187 DPR 730, 734 (2013). A tono con esto, no avalamos un contrato que recoge una obligación anterior bajo la que ya las partes hicieron prestaciones. Vicar Builders v. ELA et al., supra, pág. 268. Por ejemplo, "realizar una obra antes de tener un contrato escrito viola las normas de contratación gubernamental". Rodríguez Ramos et al. v. ELA et al., 190 DPR 448, 460 (2014) (citando a ALCO Corp. v. Mun. de Toa Alta, 183 DPR 530 (2011).

En resumen, la Autoridad arguyó que el foro primario abusó de su discreción al obligar a una corporación pública a firmar una renovación retroactiva de un contrato expirado. Esto pues, el foro primario subrayó la obligación de la Autoridad de firmar aquello que fuera necesario para cumplir con lo ordenado. Aclaró que no había prohibición alguna para que las partes firmaran **un contrato nuevo**, documento o acuerdo que permitiera efectuar exclusivamente los trabajos que se incluyeron en el remedio provisional inicial. **Abundó en que eso no era una orden para dar vigencia retroactiva al contrato que existió entre las partes.**

Con ese cuadro, la interpretación armoniosa de las órdenes del Tribunal de Primera Instancia nos lleva a concluir que no estamos ante un problema de contratación gubernamental retroactiva. Aquí no se comenzó a realizar los trabajos del remedio provisional antes de tener un contrato

escrito. Es decir, no se buscaba suscribir un contrato posterior a la ejecución de la obra.

Lo que si debemos evaluar es la razonabilidad de la orden de suscribir un contrato nuevo, documento o acuerdo para cumplir con el remedio interlocutorio inicial.

D. Consentimiento en los contratos

En nuestro ordenamiento contractual prevalece el principio rector de la autonomía de la voluntad de los contratantes, con el límite de que lo pactado no sea contrario a la ley, la moral ni al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372 (derogado). Véase: e.g., Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753. Indiscutiblemente, cuando concurren los elementos de consentimiento, objeto y causa, las partes involucradas quedan obligadas a las condiciones y los términos pactados. Arts. 1044 y 1213 del Código Civil de 1930, 31 LPRA secs. 2994 y 3391. Véase: e.g., Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Véase, además: Betancourt González v. Pastrana Santiago, 200 DPR 169, 182 (2018); Demeter Int'l v. Srio. Hacienda, supra, pág. 727. Establecida la capacidad de las partes, el consentimiento, que se manifiesta por la concurrencia de la oferta y aceptación, es el requisito primordial mediante el que se perfeccionan los contratos. Véase: Arts. 1210 y 1214 del Código Civil de 1930 (derogado), 31 LPRA secs. 3375 y 3401; e.g. Arts. 1237 y 1238 del Código Civil de 2020, 31 LPRA secs. 9771 y 9772. Véase, además: Ramírez Pabón, op. cit., pág. 133.

Es facultativo contratar o no hacerlo. Véase:  Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372 (derogado); e.g. Art. 1232 Código Civil de 2020, 31 LPRA sec. 9753. Véase, además: M. García Cárdenas, El nuevo Derecho de Obligaciones y Contratos: Código Civil 2020, 1ra ed., San Juan, Ed. MJ Editores, 2021, pág. 351. "[E]s un principio cardinal en el ordenamiento jurídico puertorriqueño que nadie está obligado a contratar". PRFS v. Promoexport, 187 DPR 42, 55 (2012). Véase, además: Colón v. Glamorous Nails, 167 DPR 33, 44 (2006). Si no existe la voluntad de obligarse, o fundamento razonable para concluir que esta existe, no surge un vínculo contractual. Trinidad v. Chade, 153 DPR 280, 293 (2001).

A la luz de esto, vemos que las partes podían firmar un nuevo contrato para realizar aquello que se incluyó en el remedio provisional. Sin embargo, el foro primario no podía obligar a la Autoridad a suscribir estos acuerdos. Así hacerlo redundaría en un contrato probablemente nulo por carecer del elemento esencial de consentimiento. Las medidas provisionales no configuran un escenario que represente una excepción a esto. Por eso, los foros inferiores erraron al dictar y confirmar las resoluciones 3 y 4.

E. Fin del vínculo contractual

En resumen, la Autoridad planteó que la orden de conexión a las bombas existentes advino académica, toda vez que su propósito era preservar el *status quo* durante la vigencia del contrato, pero este expiró por el mero paso del tiempo.

El Art. 4.1 del contrato expresaba: "*The Contractor shall be required to complete all task and project scope within three hundred and ten (310) calendar days from the date of the Notice to Proceed[…] **Both Parties agree that time is the essence of the Contract**". (Énfasis suplido). Ap. del certiorari, pág. 1266. Mientras tanto, el Art. 4.2 establecía que este tendría una vigencia de 360 días a partir de su firma. El 28 de junio de 2019, el contrato se enmendó por cuarta vez para modificar el Art. 4.2 "*only and exclusively to extend the term of the Contract until December 31, 2019. This extensión of the Contract does not extend the Completion Date*". Ap. del certiorari, pág. 306. Nótese que la Autoridad mencionó que anteriormente las partes realizaron una segunda enmienda al contrato para aumentar el tiempo de entrega de la obra a 514 días. Por último, el Art. 19 del contrato instituía que la Autoridad podía concluir la relación contractual si Engineering Services no completaba el trabajo dentro de los términos dispuestos en el Art. 4.

De hecho, en su alegato, Engineering Services reconoció que el contrato expiró por sus propios términos el 31 de diciembre de 2019. Pero enfatizó que el foro primario no ordenó que se continuara construyendo bajo el contrato. Asimismo, sostuvo que **los remedios provisionales tenían razón de ser en el momento en que se concedieron porque el contrato estaba vigente.**

A todas luces, las partes voluntariamente pactaron un término de vigencia para la relación contractual. Incluso,

**en medio del pleito la Autoridad y Engineering Services decidieron extender la vigencia del contrato con la salvedad de que esa extensión no alargaba el *"completion date"*.**

Aunque el Tribunal de Apelaciones no discutió si el contrato expiró, la realidad es que este expiró por sus propios términos. Dado que las partes pactaron esta cláusula de manera voluntaria, nos parece que el foro primario interfirió indebidamente con la voluntad expresa de las partes sin razón suficiente para ello. **Una vez pasó la fecha de vigencia acordada, la relación contractual culminó, por lo que no se puede ejecutar obra alguna bajo el contrato original.** Esto es así, más aún, en ausencia de una determinación del foro primario de que el contrato continuaría vigente.

Tal como surge de la política pública de la contratación gubernamental, no se debe permitir que un contratista provea un servicio sin estar cobijado por un contrato. En este caso, los remedios provisionales no pueden incluir la continuación de la obra por parte de Engineering Services luego de vencido el contrato. Se requería la otorgación de un nuevo contrato.

III

Cuando el tribunal otorgó el remedio provisional de la conexión, el contrato entre las partes estaba vigente. La llegada de la fecha pautada para la conclusión de la vigencia del contrato fue un cambio en las circunstancias que amerita dejar sin efecto las medidas provisionales.

La preocupación de preservar el *status quo* antes de que el tribunal emitiera su determinación final, se desvaneció cuando el vínculo contractual entre las partes concluyó. Ante los cambios fácticos, el remedio provisional dejó de ser adecuado e idóneo para asegurar la sentencia que en su día recaiga. Es decir, esa medida ya no es la que mejor asegura la reclamación y menos inconvenientes ocasiona al demandado. Durante el trámite del caso, el escenario fáctico cambió.

En el balance de factores y según las circunstancias particulares de este caso, los remedios provisionales impugnados no se sostienen pues su utilidad práctica caducó, ya no son razonables. Por el fin del vínculo contractual, la Autoridad queda libre para contratar a cualquier otra entidad que desee para culminar el Proyecto según sus especificaciones. Además, se puede dilucidar cómo puede ser compensado el interés de Engineering Services en el Proyecto.

Destacamos que esta conclusión sobre el cambio de las circunstancias se limita únicamente a las resoluciones de los remedios provisionales en controversia. Además, de ningún modo estamos avalando el incumplimiento de la Autoridad con las órdenes del tribunal como medida dilatoria. El Tribunal de Primera Instancia tiene la facultad para imponer las sanciones que estime necesarias.

En fin, no estamos ante una controversia cuya resolución debe ser rechazada por académica ya que el caso

puede continuar en otros aspectos pertinentes. Engineering Services puede reclamar cualquier remedio que entienda le corresponde por los actos de la Autoridad y viceversa. Todo ello es sin perjuicio de nuevas peticiones basadas en hechos nuevos. Sin duda, subsisten aspectos esenciales de la controversia. Específicamente, resta por dilucidar si: (1) el contrato exigía bombas nuevas o existentes; (2) las multas que impuso la Autoridad son inoficiosas; (3) se debe liberar el retenido del contrato, y (4) todo lo relacionado a daños que corresponda en derecho.

IV

Por los fundamentos expuestos, se revoca la Sentencia del Tribunal de Apelaciones. Se dejan sin efecto, las resoluciones 1, 2, 3 y 4 del Tribunal de Primera Instancia, en aquello que sea incompatible con lo aquí dispuesto. Se devuelve el caso al foro primario para que continúe los procedimientos en conformidad con lo indicado en esta Opinión.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Engineering Services International, Inc.

    Recurrida

      v.

Autoridad de Energía Eléctrica de Puerto Rico

    Peticionaria

CC-2020-0640

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la Sentencia del Tribunal de Apelaciones. Se dejan sin efecto, las resoluciones 1, 2, 3 y 4 del Tribunal de Primera Instancia, en aquello que sea incompatible con lo aquí dispuesto. Se devuelve el caso al foro primario para que continúe los procedimientos en conformidad con lo indicado en esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre con el resultado sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino. El Juez Asociado señor Feliberti Cintrón se inhibió.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo